IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

JOHN PARKER,                                                                                          PLAINTIFF
ADC #169181

v.                                                  5:19CV00199-JTK

ADAMS, et al.                                                                                       DEFENDANTS

## MEMORANDUM AND ORDER

**I.     Introduction**

Plaintiff John Parker filed this pro se action pursuant to 42 U.S.C. § 1983 while incarcerated as a pretrial detainee at the W.C. "Dub" Brassell Adult Detention Center (Jail). (Doc. No. 2, p. 3). He claimed Defendants failed to provide him a job as a porter at the Jail because they are prejudiced against white inmates, and asked for damages.

This matter is before the Court on Defendants' Motion for Summary Judgment, Brief in Support, and Statement of Facts (Doc. Nos. 33-35), to which Plaintiff responded (Doc. No. 36). Defendants then supplemented their response (Doc. No. 38), pursuant to this Court's May 6, 2020 Order (Doc. No. 37), and Plaintiff filed a Reply (Doc. No. 39).

**II.    Complaint** (Doc. No. 2)

Plaintiff claimed that when he asked both Defendants for a porter job they responded that they did not have white porters working at the Jail. He stated both Adams and Baker are racist and should not be working at the Jail, and that Adams placed a black man as a porter even though Plaintiff asked for the job. When the grievance coordinator asked Plaintiff to speak with her in her office about his complaint, Plaintiff refused to talk about it because both Defendants were also present in the office.

1

### III.    Summary Judgment

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.   See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).    "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"    Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)).    "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'"   Id. at 1135.   Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

#### A.    Official Capacity Liability

Defendants first ask the Court to dismiss Plaintiff's monetary claims against them for failure to show a pattern of unconstitutional conduct sufficient to establish a custom.

A suit against a county official in his official capacity is the equivalent of a suit against the county itself. Liebe v. Norton, 157 F.3d 574, 578-9 (8th Cir. 1998). In order for a county to be held liable for the unconstitutional acts of its officials, Plaintiff must allege and prove that a written county policy or pattern of widespread unconstitutional conduct was the moving force behind the unconstitutional actions. Jane Doe A v. Special School District of St. Louis County, 901 F.2d 642, 646 (8th Cir. 1990). Although Plaintiff alleged an unwritten policy by Defendants to hire only

2

black porters, Defendants presented the Affidavit of Defendant Adams who stated that between March 23, 2019 and December 2019 the Jail employed five white and five black inmates as porters. (Doc. No. 35-1, p. 1) Defendant also added that Plaintiff was not hired because he was not hygiene compliant to assist with the Jail's activities. (Id.)

Although Plaintiff claimed in response that Defendants did not hire the white porters until after he filed his lawsuit on June 13, 2019, he provided no evidence of such. In addition, a single incident is not evidence of a custom or practice, absent proof that the incident was caused by an existing, unconstitutional municipal policy which could be attributed to a policymaker. Oklahoma City v. Tuttle, 471 U.S. 808, 823-4 (1985). Plaintiff provides no such proof; therefore, the Court finds no basis on which to find official capacity liability.

**B.     Individual Capacity Liability**

Defendants also ask the Court to grant them summary judgment on Plaintiff's claims against them in their individual capacities, based on Plaintiff's failure to show that Defendants' decisions to assign work were not driven by discrimination. Plaintiff again responded that Defendants did not hire white porters until after he filed the lawsuit, and that the white porters who were hired did not work for more than a month. With respect to Defendant Adams' claim that Plaintiff was denied the job based on his lack of hygiene, Plaintiff states that the porters only pass out food and help with laundry at night..

According to exhibits presented by Defendants, Plaintiff filed a grievance on May 10, 2019, stating that he asked Adams and Baker for a porter job and they both replied that they don't have white porters working at the Jail. (Doc. No. 38-4, p. 1) H filed another grievance with the same complaint on May 16, 2019, and the grievance response from Ms. J. Browley was, "This matter will be looked into. I do not believe he would tell you that because he has chosen white

3

porter." (Doc. No. 38-5) On May 24, 2019, Plaintiff requested to be a porter and Captain Adams responded, through J. Browley, "not at this time." (Doc. No. 38-6) Plaintiff again requested to be a porter on May 29, 2019, and the response was again, "not at this time." (Doc. No. 38-7) Plaintiff also filed a grievance on June 6, 2019, stating that the grievance coordinator (J. Browley) called him into her office to talk about the grievances he filed, and when he arrived, both Adams and Baker were in her office. (Doc. No. 38-1) He then responded that he would not say anything in front of Adams and Baker, and complained in the grievance that Browley was wrong for including them in the meeting. (Id.) Ms. Browley responded to Plaintiff's grievance, stating that she spoke with both Plaintiff and Adams to verify the information in the grievance, because Adams did not recall speaking with Plaintiff about being a porter. (Id.) Browley continued by stating that Caucasian males and females have worked and are presently working as porters, and at the time Plaintiff made his request, there were no positions available. (Id.) Plaintiff then "advised that he may have taken the response incorrectly." (Id.)

Defendants also present the policies governing detainee trustees (Doc. No. 38-2) and housing and sanitation. (Doc. No. 38-3) The latter policy requires detainees to keep their persons and quarters clean and in proper order and provides detainees the opportunity to bathe daily unless they are in isolation cells. (Id., p. 2)

**C.     Analysis**

"A fundamental principle of equal protection is that the Constitution only prohibits intentional or purposeful discrimination by the state." Klinger v. Department of Corrections, 31 F.3d 727, 733 (8th Cir. 1994). Equal protection requires the government to treat similarly-situated people alike, and dissimilar treatment of dissimilarly situated persons does not violate equal protection. Id. at 731. "[U]equal treatment of persons who are 'entitled to be treated alike, is not a

denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination.'" Lewis v. Jacks, 486 F.3d 1025, 1028 (8th Cir. 2007) (quoting Batra v. Bd. Of Regents, 79 F.3d 717, 721 (8th Cir. 1996) (other citations omitted). Although "discriminatory purpose can be proved with various kinds of direct and circumstantial evidence… [it] is most often proved with evidence that similarly situated inmates were treated differently. Lewis, 486 F.3d at 1028).

Plaintiff claims Defendants treated him dissimilarly from black inmates by denying his request to work as a Jail porter. However, Defendants provide affidavit evidence that both black and white inmates were hired as porters during the time Plaintiff was incarcerated at the Jail. (Doc. No. 35-1)[1] In addition, the grievance responses do not support Plaintiff's allegation that Defendants would not hire white inmates, as Ms. Browley responded on two occasions that both blacks and whites were hired as porters. (Doc. Nos. 38-1, 38-5) And, when Browley attempted to resolve the situation between Plaintiff and Defendants, Plaintiff stated that he would not discuss the situation with Defendants Adams and Baker. (Doc. No. 38-1) Ms. Browley's response to Plaintiff's grievance included a statement that after he was told (in the meeting) that there were no positions available at the time he made his request, "Detainee Parker advised that he may have taken the response (of Adams) incorrectly." Finally, Plaintiff does not dispute that his hygiene may have been an issue; he states in his response that the courts put people (inmates) to work outside to cut grass, clean, sweep, and mop. (Doc. No. 39, pp. 1-2).[2]

---

[1] In their supplemental response, Defendants provide the dates of incarceration of the ten inmates who served as porters during the time at issue. (Doc. No. 38, p. 2) This information, however, was not provided in the form of an affidavit or other official type of document.

[2] The Court notes that although Defendant Adams stated in his affidavit that Plaintiff was not hired because of his failure to comply with hygiene, that reason was never included in the

5

In conclusion, the Court finds as a matter of law that Plaintiff has not met his burden to show that Defendants treated him different from other similarly-situated people on the basis of his race, or that they intentionally and purposefully discriminated against him.

## IV. Conclusion

IT IS, THEREFORE, ORDERED that Defendant's Motion for Summary Judgment (Doc. No. 33) is GRANTED;

An appropriate Judgment shall accompany this Memorandum and Order.

IT IS SO ORDERED this 22nd day of May, 2020.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE

---

responses to Plaintiff's grievances.